UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

MICHAEL A. JOHNSON,                                  :
                                                     :
                        Plaintiff,                   :            19-CV-08745 (GBD) (OTW)
                                                     :
                 -against-                           :            **REPORT & RECOMMENDATION TO**
                                                     :            **THE HON. GEORGE B. DANIELS**
THE CITY OF NEW YORK, et al,                         :
                                                     :
                        Defendants.                  :
------------------------------------------------------------x

        **ONA T. WANG**, **United States Magistrate Judge**:

I.      **INTRODUCTION**

        Plaintiff Michael A. Johnson ("Plaintiff") brought this action against Defendants[1] New

York City, (the "City"), Department of Social Services Commissioner Dexter Freeman

("Freeman"), New York City Human Resource Administration Officers ("HRA") Harriet Burke

("Burke"), Alexis Rodriguez ("Rodriguez"), and Nancy Coleman ("Coleman"), and former HRA

Sargeant Wendell Wright ("Wright") (together, "Defendants") pursuant to 42 U.S.C. §§ 1983,

1985, and 1988 ("Section 1983," "Section 1985," "Section 1988," respectively) in connection

with Plaintiff's arrest on or about November 9, 2017[2].  (ECF Nos. 2, 7). Defendants move for

summary judgment on all claims. In support of Defendants' motion for summary judgment (ECF

143), Defendants submit: two memoranda of law (ECF Nos. 143, 159); a statement of

undisputed material facts pursuant to Rule 56.1 (ECF 142); response to Plaintiff's "First

---

[1] The original list of Defendants is voluminous and impractical to recite here as the majority were quickly dismissed from the action. (*See* ECF 9). At the time of the instant motion, only six Defendants remain. (ECF 143 at 1).

[2] Plaintiff claims the incident occurred November 8, 2017, but all the records provided by Defendant indicate it was November 9, 2017.

Statement of Material Fact" (ECF 160); second response to Plaintiff's "Second Statement of

Additional Material Facts" (ECF 161); and attached  exhibits[3] (ECF 141).  On January 31, 2025,

Plaintiff filed his opposition. (ECF 153). In support of his opposition to the Defendants' motion

for summary judgment, Plaintiff submitted: a response to Defendants' statement of material

facts pursuant to Rule 56.1 (ECF 153); and "Plaintiff's Second Set of 'Additional Material Facts

Supported by Admissible Evidence,'" attaching exhibits[4].  (ECF 158).  On February 25, 2025,

Defendants submitted their reply along with a response to ECF 158, and the motion was fully

briefed. (ECF Nos. 159, 160, 161).

     For the reasons stated below, The Court respectfully recommends that Defendants'

motion for summary judgment be **DENIED** as to the excessive force claim and **GRANTED** as to all

other claims.

## II.    BACKGROUND

     The following facts are drawn from the parties' submissions and the underlying record.

Specifically, I reviewed video evidence of the incident captured by surveillance cameras located

at the Jerome Center—an HRA facility in the Bronx where the alleged incident giving rise to this

action took place. (ECF Nos. 141-6, 7, 8). The first camera (ECF 141-6) shows a waiting room

with a large seating area on the upper right side of the frame, about half of an elevator bank on

the lower left side of the frame, and ropes forming a queue leading outwards between them.

---

[3] Pin cites to video exhibits reflect time stamps in the electric files provided to the Court.

[4] Plaintiff included 193 pages of exhibits purporting to relate to "good conduct," "Top officials help," (sic), "Reports notes," and "Actions, Conference." (ECF 158 at 5). The bulk of these documents which include, *inter alia*, form response letters from Presidents Barack Obama, Joe Biden, and George W. Bush as well as New York City Mayor Bill De Blasio, a photo of Plaintiff's dog, and a "Notary Agreement with Merged Organizations Light the Way International Ministry."

There is a security guard at a desk near the front of the room and a few non-party, unidentified people seated in the waiting area. A second camera is what Defendants label as the "elevator bank" and captures a hallway with a large architectural feature obscuring the area immediately in front of a pair of elevator doors. (ECF Nos. 141-7, 8).

On or about November 9, 2017, Plaintiff, a client at the Jerome Center, visited the location twice to seek housing assistance and became convinced that staff members there were "going to get him." (ECF 141-1 at 6). At approximately 14:00 that day, Plaintiff arrived at the Jerome Center, accompanied by his service dog[5], for what he claims is a meeting with a non-party social worker. (ECF 141-3). The video begins with what appears to be the exchange between the social worker and Plaintiff, who both enter through a door to the left of the waiting area. (ECF 141-6 at 00:30:00). Plaintiff can be seen crossing from the waiting area to the elevator bank and taking out what appears to be a phone in his hand, although it is unclear what, if anything, he does with the phone. (ECF 141-6 at 00:50:00). Defendants assert, and Plaintiff does not dispute, that Plaintiff took a photograph inside the facility, despite such conduct being prohibited by HRA regulations. (ECF Nos. 141-1 at 11, 141-12 at 5, 141-15). A few seconds after Plaintiff holds a phone in his hands, the non-party social worker holds up his arm and appears to shout something while the Plaintiff retreats to the left of the frame, off-camera, inside an alcove. (ECF 141-6 at 01:00:00). Defendants assert that, because of the heated dispute between Plaintiff and the non-party social worker, an HRA Officer called Defendant Burke to assist. (Nos. ECF 141-2, 141-3). Plaintiff is largely off-camera for the next three minutes before a non-party social worker and a non-party security guard enter from a door near the waiting area

---

[5] The dog is identified as a service animal by Plaintiff. (ECF 14 at 1).

and cross the room to the elevator bank in an apparent attempt to engage with Plaintiff. (ECF Nos. 142 at 2; 141-6 at 00:04:13-00:04:16). Plaintiff continues to remain out of view for the next several minutes, though he can be identified as just off screen by occasional appearances of his pantleg or dog, who becomes excited and starts to jump around but does not appear aggressive. The remaining Officer Defendants arrive after about two minutes. (ECF 141-6 at 06:00:00).

The provided video lacks any audio, so it is not possible to determine what was said but it is apparent from the Defendant Officers' body language that a heated verbal exchange between Plaintiff and Defendant Officers took place in the waiting area.  (ECF 141-6 at 00:06:47-00:07:40).  Video evidence also confirms that Plaintiff held a dowel rod in his hands at some point during this exchange; because it is only visible for about a second, it is unclear if he produced the dowel rod at that exact moment or if he already had it in his hand when he turned toward the camera.  (ECF 141-6 at 00:07:43). Following the exchange, Plaintiff can be seen turning away from the officers and walking back toward the elevator bank.  (ECF 141-6 at 00:07:43-00:07:48). The remainder of the incident is captured from the "elevator bank" camera. (ECF 141-8).

At the elevator bank, Plaintiff enters on the bottom right of the frame followed by the Defendant Officers. (ECF 141-8 at 02:00:00). After disappearing behind a structural obstruction in the elevator bank (ECF 141-8 at 0:02:38), Plaintiff reappears with the dowel rod visible in his hands. (ECF 141-8 at 00:02:44).  Parties dispute what happened next and video evidence does not clearly corroborate either account because the camera is obstructed by a column or by the closed elevator doors.

4

A review of the video evidence confirms that the entire sequence leading up to Plaintiff's arrest—from the Officers' arrival at the elevator bank with Plaintiff to their entry into the elevator—lasts approximately five minutes. (ECF 141-8 at 0:02:38–0:07:57). During the first 30 seconds, Plaintiff enters the elevator bank while surrounded by the Officers.[6] (ECF 141-8 at 0:02:32–0:03:10). One Defendant Officer grabs Plaintiff by the coat sleeve and directs him toward the elevator. (ECF 141-8 at 0:02:52). Inside the elevator—where they remain for approximately two minutes and thirty seconds—the video is obstructed by the closed elevator doors. (ECF 141-8 at 0:03:10–0:05:21). Plaintiff alleges that, at this point, Defendant Officers verbally threatened him and physically attacked him, at that one Defendant Officer used a racial slur during the attack. (ECF 153 at 5). Despite the video evidence clearly establishing that Plaintiff was out of view inside the elevator for under 3 minutes, Plaintiff claims that the Defendant Officers beat him for "15 to 20 minutes" with "punches, kicks, and jabs." (ECF 141-1 at 17 ¶¶ 7 – 10). Plaintiff alleges this assault included Defendant Wright obstructing Plaintiff's breathing for twelve to fifteen minutes; Officer Rodriguez punching Plaintiff ten to twelve times and kicking his side; and a third unidentified HRA Officer kicking Plaintiff's dog. (Nos. ECF 141-1 at 17, 153 at 5-6). Plaintiff further asserts that the Officers did not attempt to handcuff him but instead physically assaulted him even though he was not resisting arrest. (ECF 153 at 6). Plaintiff also alleges that the Officers repeatedly accused him of "getting their friends in trouble" during the assault. (ECF 153 at 5).

---

[6] Due to the previously noted structural obstruction in the center of the elevator bank, portions of the interactions between the Defendant Officers and Plaintiff remain partially obscured.

When the elevator doors open again, video evidence shows Plaintiff is on the floor[7], surrounded by Officers, but both their positioning and the camera angle obstruct a clear view of what occurred.  (ECF 141-8 at 0:05:21–0:07:55).  The Officers and Plaintiff then appear to re-enter the elevator, but the exact moment of Plaintiff's arrest is unclear.  (ECF 141-8 at 0:05:21-0:07:55). Once Plaintiff is handcuffed and taken out of view, one Defendant Officer hands the leash attached to the Plaintiff's dog to another Defendant Officer who walks off screen with the dog. The dog seems to bark but does not appear dangerous or to bite anyone, though much of what happened is obscured or out of frame. (ECF 141-8 at 00:06:21-00:6:40).

After his arrest, Plaintiff requested medical attention, and the Defendant Officers called an ambulance.  (ECF Nos. 141 at 21 ¶¶ 23; 153 at 6 ¶ 33). The Ambulance Report notes that, upon EMS arrival, Plaintiff was "conscious, breathing normally, and alert," and it lists his chief complaint as "THEY ATTACKED ME" (sic). (ECF 141-9 at 2-3).  Plaintiff disputes the characterization of his injuries and contends that he informed emergency personnel, as well as an unnamed, non-party New York City Fire Department Responder, of various alleged injuries, *inter alia*: pain in his head, neck, back, legs, shoulders, and chest; as well as blurry vision; and difficulty breathing. (ECF Nos. 153 at 7; 141-1 at 27).  The ambulance transported Plaintiff to Lincoln Hospital, arriving at around 16:40 (ECF 141-5). Hospital records indicate an examination of Plaintiff's head, ears, nose, throat, and back was unremarkable, and Plaintiff was, overall, assessed to be in stable condition. (ECF 141-5). Ultimately, Plaintiff's only documented visible injury was a "small hematoma" on the top of his head.  (ECF 141-5).

---

[7] Because of an obstruction, the video evidence does not capture how Plaintiff goes from inside the elevator to lying on the floor outside the elevator with the Defendant Officers surrounding him.

The following day, Defendant Wright signed an accusatory instrument in Bronx County Criminal Court.  (ECF 141-9).  Plaintiff remained in custody for approximately two more days before being arraigned on charges of assault in the second degree and lesser included offenses. (ECF 141-12).  Plaintiff was then released on his own recognizance.  (ECF 141-12).  On January 13, 2020, Plaintiff's felony charges were dismissed, and Plaintiff accepted an adjournment in contemplation of dismissal on March 3, 2020, which disposed of the remaining charges. (ECF 141-13).

Plaintiff, who proceeds *pro se*, does not clearly state a cause of action in his Second Amended Complaint, only alleging that "this is a claim for personal injuries arising out of an assaults (sic), battery, false arrests and imprisonment (sic), excessive use of force and Conspiracy, intensely bias negligence (sic), malicious prosecution…[and] violations in Veteran Rights (sic) and American Disabilities Acts (sic), showing racism bias, Hate Crimes, Violated Constitutional Rights, Civil Liberties, Civil Rights" (sic). (ECF 14 at 1). However, in keeping with the Court's obligation to read *pro se* pleadings generously, the Court construes Plaintiff's claims, when read in the strongest possible light, to be: (1) Section 1983 claims arising from his arrest for excessive force, false arrest, malicious prosecution, and various other equal protection violations;  (2) Section 1985 claims that the Defendants conspired to violate his civil rights; and Section 1988 claims for violations of New York State civil rights laws.

Plaintiff filed the initial complaint on September 19, 2019 (ECF 1) and filed an amended complaint on February 5, 2020.  (ECF 7).  He filed a second amended complaint ("SAC") on September 3, 2020. (ECF 14). On January 28, 2021, this case was referred to me for general

pretrial management and dispositive motions. (ECF 19).  Defendants collectively moved for

summary judgment on November 8, 2024.  (ECF 140).

III.    **STANDARD OF REVIEW**

A court may grant a motion for summary judgment when a movant shows that there is

no genuine dispute as to any material fact and that they are entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(a); *Celotex Corp*. v. *Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is

one that would affect the action's outcome under governing law. *Sista* v. *CDC Ixis N. Am., Inc.,*

445 F.3d 161, 169 (2d Cir. 2006).  A "dispute," or "genuine issue of material fact" exists if the

evidence shows that a reasonable factfinder could return a verdict for the nonmovant. *Id*. If no

reasonable factfinder could return a verdict for the nonmovant, because the evidence to

support his case is so slight, then there is no genuine issue of material fact, and a court may

properly grant summary judgment.  *Gallo* v. *Prudential Residential Servs., Ltd. P'ship*, 22 F.3d

1219, 1224 (2d Cir. 1994).

When deciding a motion for summary judgment, the Court views the evidence in the

light most favorable to the party opposing summary judgment and draws all reasonable

inferences in favor of that party.  *Amnesty Am*. v. *Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir.

2004).  The Court avoids making credibility assessments.  *Id*.  When the nonmovant bears the

burden of proof on a disputed claim, the movant may... satisfy their burden by pleading facts

that indicate an "absence" of evidence supporting an "essential element" of the nonmovant's

case.  *Crawford* v. *Franklin Credit Mgmt*., 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady* v.

*Town of Colchester*, 863 F.2d 205, 210–11 [2d Cir. 1988]).  If the moving party meets their

burden, the burden then shifts to the nonmovant to provide persuasive evidence showing their claim is not implausible.  *Id*.

      If the movant satisfies that burden, the opposing party must establish a genuine issue of fact by citing materials from the record to survive the motion.  *See* Fed. R. Civ. P. 56(c)(1)(A). The existence of a mere "scintilla of evidence" in support of the nonmovant's position cannot defeat the motion (*Fabrikant* v. *French*, 691 F.3d 193, 205 [2d Cir. 2012]); the nonmovant must create more than an abstract, "metaphysical doubt," as to the material facts in the case. *Aslanidis* v. *U.S. Lines, Inc*., 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp*., 475 U.S. 574, 586 [1986]).  Neither conclusory statements devoid of specifics (*see Ridinger* v. *Dow Jones & Co*. Inc., 651 F.3d 309, 317 [2d Cir. 2011]), or a nonmovant's self-serving statement that lacks supporting direct or circumstantial evidence (*Fincher* v. *Depository Tr. & Clearing Corp*., No. 6-CV-9959, 2008 WL 4308126, at *3 [S.D.N.Y. Sept. 17, 2008], *aff'd*, 604 F.3d 712 [2d Cir. 2010]) can defeat a properly supported motion for summary judgment.

      "Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), a party opposing a summary judgment motion shall respond to the moving party's statement of material facts in correspondingly numbered paragraphs and shall include "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b).

      In Defendants' reply, they ask the Court to strike Plaintiff's response to their Rule 56.1 statement as improper in form and content. (ECF 159 at 4). The Court will not enforce such a

harsh penalty on a *pro se* Plaintiff simply for errors in form. However, Defendants properly contend that Plaintiff's failure to cite, even informally, to admissible evidence in his response to Defendants' Rule 56.1 statement is sufficient for the Court to deem the facts outlined by Defendants to be admitted for the purposes of this summary judgment motion. (ECF 159 at 5-6). "Where the court's independent review of the record yields evidence contrary to a given assertion in the moving party's Local Civil Rule 56.1 statement, or where a party fails to support an assertion by citing admissible evidence, the court may reject that assertion." *Smith v. City of New York*, No. 12-CV-4892, 2014 WL 5324323, at *1 (citation omitted). "Conversely, where the moving party's Local Civil Rule 56.1 statement is not contradicted by the court's review of the record, then the party's assertions will be 'deemed admitted as a matter of law' for the purposes of a summary judgment motion." *Id* (quoting *Chitoiu v. UNUM Provident Corp.,* No. 5-CV-8119, 2007 WL 1988406, at *1 n. 1 [S.D.N.Y. July 6, 2007] [granting summary judgment against *pro se* plaintiff who failed to respond to defendant's Local Civil Rule 56.1 statement of facts]). Nevertheless, in deference to the Plaintiff's *pro se* status, the Court will conduct an independent review of the facts and evidence on the record in determining this motion.

IV.    **ALLEGED CONSTITUTIONAL VIOLATIONS**

A.  **Excessive Force**

The Fourth Amendment's guarantee of the right against unreasonable seizure prohibits the excessive use of force in the course of an arrest or other seizure. *Graham* v. *Connor*, 490 U.S. 386, 394 (1989). A court must analyze claims of excessive force under the Fourth Amendment's "objective reasonableness" standard. *Scott v. Harris*, 550 U.S. 372, 381 (2007) (citing *Graham*, 490 U.S. at 388). To establish that an officer's use of force was unreasonable

and a violation of the Fourth Amendment, a plaintiff must show "that the government interests at stake were outweighed by 'the nature and quality of the intrusion on [plaintiff's] Fourth Amendment interests.'" Amnesty *Am.* v. *Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 396). Although the circumstances of an arrest may justify an officer in using some degree of force, "an officer is not entitled to use an unlimited amount of force, even where the arrestee resists or assaults the officer." *Garcia* v. *Greco*, No. 05-CV-9587, 2010 WL 446446, at *4 (S.D.N.Y. Feb. 9, 2010). "The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Sullivan* v. *Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000). "Because of the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Barlow* v. *Male Geneva Police Officer who Arrested me on January 2005*, 434 Fed.Appx. 22, 23–24 (2d Cir. 2011); *McMillan* v. *City of New York*, No. 10-CIV-2296, 2011 WL 6129627, at *5–6 (S.D.N.Y. Dec. 9, 2011).

Applying these principles to the case at bar, there are genuine issues of material fact that require resolution by a jury. Although the video evidence confirms that the overall interaction between Plaintiff and Defendant Officers lasted approximately five minutes, it does not capture the critical two minutes and thirty seconds inside the elevator, where Plaintiff alleges he was subjected to excessive force. Here, the discrepancy between the parties' accounts regarding the events which took place inside the elevator is a material fact that impacts the reasonableness of the force used, notwithstanding Plaintiff's unsupported assertion of the duration of the alleged assault against him or his display of the dowel rod. Furthermore,

the record establishes Plaintiff sustained an actual injury during his arrest in the form of a

hematoma. (ECF 141-5). Because the video evidence cannot establish the cause of the

hematoma, a reasonable juror could find that it resulted from the Defendant Officers' use of

unreasonable force. This factual dispute must be resolved by a jury, as only a finder of fact may

evaluate the credibility of the witnesses and determine whether the Defendant Officers'

conduct was objectively unreasonable.

Accordingly, I respectfully recommend that Defendants' motion for summary judgment

be **DENIED** as to excessive force.

### B.  FALSE ARREST

An arrest undertaken without a warrant "must be supported by probable cause or else it

violates the Fourth Amendment."  *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008).  A

claim for false arrest under Section § 1983 is grounded in the Fourth Amendment right to be

free of unreasonable seizures and is substantially the same as a claim for false arrest under New

York law.  *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).  To state a claim for false arrest under

Section 1983, a plaintiff must allege that: "(1) the individual defendants intended to confine

him; (2) he was conscious of the confinement; (3) he did not consent to the confinement; and

(4) the confinement was not otherwise privileged." *Willey v. Kirkpatrick*, 801 F.3d 51, 71 (2d Cir.

2015) (quoting *Broughton v. State*, 335 N.E.2d 310, 314 [N.Y. 1975]. An arrest is considered

"privileged" when it is supported by probable cause.  *Savino* v. *City of New York*, 331 F.3d 63, 76

(2d Cir. 2003). The existence of probable cause serves as a complete defense to a false arrest.

*Weyant*, 101 F.3d at 852; *Folk* v. *City of New York*, 243 F. Supp. 3d 363, 371–72 (E.D.N.Y. 2017).

Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy

information sufficient to warrant a person of reasonable caution in the belief that an offense

has been committed by the person to be arrested.'"  *O'Neill* v. *Town of Babylon*, 986 F.2d 646,

650 (2d Cir. 1993) (quoting *Calamia* v. *City of New York*, 879 F.2d 1025, 1032 [2d Cir.1989]); *see*

*also Singer* v. *Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995).  In assessing whether

probable cause existed, courts evaluate the totality of the circumstances (*Jenkins v. City of New*

*York*, 478 F.3d 76, 90 [2d Cir. 2007]), based on "a full sense of the evidence that led the officer

to believe that there was probable cause to make an arrest." *Stansbury v. Wertman*, 721 F.3d

84, 93 (2d Cir. 2013). Courts should consider "those facts available to the officer at the time of

the arrest and immediately before it." *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)

(quoting *Panetta v. Crowley*, 460 F.3d 388, 395 [2d Cir. 2006]). Summary judgment dismissing a

plaintiff's false arrest claim is appropriate when the undisputed facts indicate that the arresting

officer's probable cause determination was objectively reasonable.  *See Cerrone*, 246 F.3d at

199. If, however, the undisputed facts show the officer acted unreasonably in concluding

probable cause existed, or if the officer's reasonableness turns on material issues of fact, then

summary judgment in favor of the officer is inappropriate. *Jenkins*, 478 F.3d at 88. The arresting

officer's state of mind, aside from the facts they know at the time of the arrest, is "irrelevant"

to a determination whether probable cause existed for an arrest.  *Devenpeck v. Alford*, 543 U.S.

146, 153 (2004).

Here, Defendants assert that they had probable cause to arrest Plaintiff, for, *inter alia*,

menacing in the second degree, in violation of N.Y. Penal Law § 120.14.01. (ECF 143 at 6; ECF

142 at 4 ¶¶ 16-17). A person commits menacing in the second degree when "[they]

intentionally place[ ] or attempt[ ] to place another person in reasonable fear of physical injury,

serious physical injury, or death by displaying a deadly weapon [or] dangerous instrument…"
*See* N.Y Penal Law §120.14(1). The New York Court of Appeals tells us: "The courts of this State
have consistently adopted [a] use-oriented approach" to determine what constitutes a
"dangerous instrument" under N.Y. Penal Law § 10.13. *People v. Carter*, 423 N.E.2d 30, 32 (N.Y.
1981). *See e.g. People v. Cwikla*, 400 N.Y.S.2d 35 (N.Y. 1977)*, rev'd on other grounds* 386 N.E.2d
1070 (N.Y. 1979) (holding that a handkerchief, used as a gag, was a "dangerous instrument");
*People v. Rumaner*, 375 N.Y.S.2d 735, 737 (N.Y. App. Div. 1975) (holding leather boots, used to
kick a person in the face, were a "dangerous implement"); *People v. Bouldin*, 338 N.Y.S.2d 686,
688 (N.Y. App. Div. 1972) (holding a spatula used to inflict a cut was a "dangerous implement").
When an implement is not inherently dangerous, we must determine [that the object was]
readily capable of causing serious physical injury in the way in which [it was] used." *Carter*, 423
N.E.2d at 31-32.

It is undisputed by video evidence that Plaintiff holds a wooden dowel rod in his hand
during his argument with the Defendant Officers (ECF 141-6 at 00:07:43; ECF 141-8 at 0:02:44).
A wooden dowel rod is not "inherently dangerous" under N.Y. Penal Law § 10.13 and, just like
the handkerchief in *Cwikla* or the boots in *Bouldin*, a person may have any number of legitimate
reasons to carry one around. However, also like the handkerchief in *Cwikla* once used as a gag,
or the boots in *Bouldin* once used to kick, a wooden dowel rod, when waved around and
toward a person, "becomes readily capable of causing serious physical injury …" *Carter*, 423
N.E.2d at 32. Therefore, by displaying a wooden dowel rod, regardless of Plaintiff's actual
intention to use it as a dangerous implement, it became one. Accordingly, based on these

undisputed facts, Defendant Officers had probable cause to arrest Plaintiff for menacing in the second degree.

Even if they did not, the Defendant Officers would still be entitled to qualified immunity because "it was 'objectively reasonable' for [the officer] to believe [their] actions were lawful at the time of the challenged act." *Cerrone*, 246 F.3d at 199 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Plaintiff disputes some underlying facts and characterizations of his conduct in the elevator. Putting aside the fact that an HRA officer felt the need to summon the Defendant Officers in the first place because of Plaintiff's behavior, surveillance video confirms, at a minimum, that Plaintiff appears to be shouting, waving his arms, and generally behaving in a disruptive manner. Under the totality of the circumstances, it was objectively reasonable for the Defendant Officers to interpret his actions as disorderly or threatening and decide to arrest Plaintiff. Accordingly, the Defendant Officers are entitled to qualified immunity.

Since both probable cause and qualified immunity are an absolute defense to a false arrest claim under Section 1983, I respectfully recommend Defendants' summary judgment motion be **GRANTED** as to the false arrest claim.

### C.  Remaining Federal Claims

Plaintiff's remaining Section 1983 claims consist of racial bias, discrimination based on veteran status or disability, "hate crimes" (ECF 14 at 9), and a claim for malicious prosecution. To establish a violation of the Equal Protection Clause based on selective enforcement, a plaintiff must ordinarily show that: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based on impermissible considerations such as race . . . ." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004). Here,

Plaintiff supports his claims with only conclusory statements and points to no facts on the record that even suggest the Defendant Officers treated Plaintiff differently based on his identity or membership in a protected class. To the extent any allegations of malicious prosecution are made involving the remaining Defendants (rather than, for example, non-party Assistant District Attorneys), they are entitled to qualified immunity for the same reasons as the false arrest claim discussed *supra*. Accordingly, these claims must fail.

Plaintiff also alleges the Defendants engaged in a conspiracy to violate his civil rights in actionable under Section 1985. The statue requires a plaintiff to show: (1) an agreement between two or more state actors (or a state actor and a private party); (2) to act together to cause an unconstitutional injury; and (3) an overt act in furtherance of the conspiracy that caused harm. *Pangburn* v. *Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The only surviving alleged unconstitutional injury is the use of excessive force during Plaintiff's arrest. Plaintiff fails to plead any facts to substantiate his conclusory allegations that the Defendants conspired to do anything at all to Plaintiff, much less to stage an arrest as a pretext to assault him. Accordingly, Plaintiff's claims that Defendants were engaged in any kind of conspiracy actionable under Section 1985 have no support in the record and must fail.

Finally, Plaintiff also brings claims under Section 1988 for violations of New York State civil rights law for which Defendants are also entitled to summary judgment as a matter of law. Pursuant to N.Y. General Municipal Law §§ 50-e and 50-i, a notice of claim must be filed within ninety days of an actionable incident, and any lawsuit arising therefrom must be commenced within one year and ninety days. "Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality." *Diarra v. City of New York*, 771 F. App'x

69, 71 (2d Cir. 2019) (quotations omitted). Federal courts are "obligated to apply [New York's] notice-of-claim provision" to Plaintiff's state-law claims even though Section 1983 preempts them for his federal claims. *Id*. (quoting *Felder v. Casey*, 487 U.S. 131, 138 [1988]). "Failure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Id*. (*quoting* Hardy *v. N.Y.C. Health & Hosps. Corp*., 164 F.3d 789, 794 [2d Cir. 1999]). Here, for the alleged incident which occurred on November 9, 2017, the record shows that Plaintiff filed two notices of claim related to the instant matter: one on August 30, 2019, and another on March 11, 2020, six months *after* commencing this action. (See ECF Nos. 2, 14). Both dates are well beyond the statutory deadlines and must fail as a matter of law.

Accordingly, I respectfully recommend that Defendants' motion for summary judgment as to all remaining claims be **GRANTED**.

## V.    CONCLUSION

For the foregoing reasons, I respectfully recommend Defendants' motion for summary judgment be **DENIED** as to Excessive Force under Section 1983 and **GRANTED** as to other claims. In other words, I respectfully recommend that Plaintiff be allowed to proceed on his excessive force claim. While it seems unlikely a reasonable juror would find a single bruise enough evidence to prove the Defendant Officers used excessive force to effect the arrest of a plainly angry man, waving a stick around in a public space with one hand and trying to control an agitated dog with the other, it is not the Court's role on summary judgment to take the place of a finder of fact.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections.  *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail).  A party may respond to any objections within fourteen (14) days after being served.  Such objections, and any responses to objections, shall be addressed to the Honorable George Danels, United States District Judge.  Any requests for an extension of time for filing objections must be directed to Judge Daniels.  **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.  1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983).

Respectfully submitted,

/s/ Ona T. Wang

Dated: September 5, 2025                              **Ona T. Wang**
        New York, New York                       United States Magistrate Judge