UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x
MICHAEL JOHNSON,

                    Plaintiff,

    -against-

CITY OF NEW YORK, DEXTER FREEMAN, ARRIET
BURKE, ALEXIS RODRIGUEZ, NANCY COLEMAN,
and WENDELL WRIGHT,

                    Defendants.
------------------------------------------x

MEMORANDUM DECISION
AND ORDER

19 Civ. 08745 (GBD) (OTW)

GEORGE B. DANIELS, United States District Judge:

*Pro se* plaintiff Michael A. Johnson II ("Plaintiff") brings this action against Defendants the City of New York, Department of Social Services Commissioner Dexter Freeman, Human Resource Administration ("HRA") Officers Harriet Burke, Alexis Rodriguez, and Nancy Coleman, and former HRA Sgt. Wendell Wright (collectively, "Defendants") pursuant to 42 U.S.C. §§ 1983, 1985, and 1988 in connection with Plaintiff's arrest on or about November 9, 2017.

Plaintiff commenced this action on September 19, 2019. (Compl., ECF No. 1.) On February 5, 2020, Plaintiff filed an amended complaint. (Am. Compl., ECF No. 7.) On April 2, 2020, this Court granted Plaintiff leave to file a second amended complaint ("SAC"), (Order Am., ECF No. 9,) and Plaintiff did so on September 3, 2020, (SAC, ECF No. 14.) Plaintiff's SAC, when construed liberally, states six causes of action: (1) excessive force, (2) false arrest, (3) violations of the Equal Protection Clause, (4) malicious prosecution, (5) conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985, and (6) violations of New York State civil rights law.

On January 28, 2021, the case was referred to Magistrate Judge Ona T. Wang for general pretrial management and dispositive motions. (Order, ECF No. 19.) Defendants collectively moved for summary judgment on November 8, 2024. (Defs.' Mot. Summ. J., ECF No. 140.)

Before this court is Magistrate Judge Wang's September 5, 2025 Report and Recommendation ("Report") recommending that the Defendants' motion for summary judgment be denied for Plaintiff's excessive force claim under § 1983 but granted for all other claims. On September 17, 2025, Plaintiff requested additional time to object to the Report. (*See* Pl.'s Req. Extend Resp. Time, ECF No. 164, at 1.) This Court extended his time to object until September 29, 2025. (Order, ECF No. 167.) No further submission was filed with the Court. On September 19, 2025, Defendants timely objected to the portion of the Report denying their motion for summary judgment. (*See* Defs.' Partial Obj. R&R, ECF No. 165.) For the following reasons, Magistrate Judge Wang's recommendation to dismiss Plaintiff's claims is ADOPTED. The recommendation not to dismiss Plaintiff's excessive force claim is REJECTED. Accordingly, this case is dismissed in its entirety.

## I. FACTUAL BACKGROUND

This action centers on Plaintiff's November 9, 2017, arrest at the Jerome Center, an HRA facility where Plaintiff was seeking housing assistance. Plaintiff visited the Jerome Center twice on November 9, 2017, each time accompanied by his service dog. Defendants assert, and Plaintiff does not dispute, that during his second visit to the facility, Plaintiff took a photograph inside the facility, in violation of HRA policy. This action led to a heated exchange between Plaintiff and HRA staff. (*See* HRA Client Progress Notes, ECF No. 141-3, at 2.) After Plaintiff refused to leave the facility, a non-party HRA staff member called HRA Officers Burke, Rodriguez,

2

Coleman, and Former HRA Sgt. Wright (collectively, the "Officer Defendants") for assistance. (*See Id.*; November 9, 2017, Arrest Report, ECF No. 141-4, at 1.)

Video evidence of the incident, captured by surveillance cameras located at the Jerome Center, confirms that HRA Officers Burke, Rodriguez, and Coleman initially approached Plaintiff in the waiting area, where an argument immediately ensued. (Waiting Room Video, ECF 141-6, at 6:10.) As officers Burke, Rodriguez, and Coleman surrounded Plaintiff, he produced a wooden dowel rod from his bag, moved past the officers, and walked out of the waiting area and into the elevator bank. (*Id.* at 6:25–6:31.)

The surveillance camera posted in the elevator bank captured the remainder of the incident. (*See* Elevator Bank Video, ECF 141-8.) The surveillance footage shows Plaintiff entering the elevator bank, with the dowel rod still in hand, quickly followed by officers Burke, Rodriguez, and Coleman. (*Id.* at 0:05.) After Plaintiff and the officers circle a structural column in front of the two elevators, Officer Rodriguez grabs plaintiff by the coat sleeve and directs him into an open elevator. (*Id.* at 0:18–0:33.) Because of the angle of the surveillance camera, the video does not show exactly what transpired inside the elevator. The video does show, however, that after approximately one minute and forty seconds, former HRA Sgt. Wright arrived in the elevator bank and joined the other Officer Defendants and Plaintiff in the elevator. (*Id.* at 2:10.)

Plaintiff and Defendants offer dramatically different accounts of what occurred in the elevator. Plaintiff claims that while in the elevator, the Officer Defendants verbally threatened and physically attacked him, beating him with "punche[s], kick[s], and jab[s]" in the face, side, and back for "15 [to] 20 minutes." (*See* Johnson Dep., ECF No. 141-1, at 17–19, 24.) Plaintiff further alleges, among other things, that one of the Officer Defendants placed him in a "choke hold" for "12 to 15 minutes," causing Plaintiff to pass out "two or three times," and that at various

3

times during the assault, the Officer Defendants kicked his service dog and called him racial slurs. (*Id.*) Defendants deny Plaintiff's version of the incident. They claim that Plaintiff resisted arrest when he was escorted into the elevator, and that the Officer Defendants were only able to handcuff Plaintiff after he was brought to the ground. (*See* Defs.' Rule 56.1 Statement, ECF No. 142, at ¶¶ 26–29.) Video evidence confirms that the entire incident—from the moment the elevator doors open to the moment the Officer Defendants lift Plaintiff off the ground in handcuffs—lasted approximately three minutes and thirty seconds. (*See* Elevator Bank Video, at 0:33–4:05.)

After his arrest, Plaintiff requested medical attention for injuries he claimed he suffered during the arrest. (*See* Johnson Deposition, at 21.) The Officer Defendants called an ambulance to the scene, which transported Plaintiff to Lincoln Hospital for further evaluation. (*See* Lincoln Hospital Medical Records, ECF No. 141-5; Prehospital Care Report, ECF No. 141-9.) In their Prehospital Care Report, emergency response personnel did not report any physical injuries upon inspection and stated that Plaintiff was alert and breathing normally. (Prehospital Care Report, at 3.) Physicians at Lincoln Hospital also examined Plaintiff upon arrival. (*See* Lincoln Hospital Medical Records, at 2.) Defendants claim, and the Report states, that Plaintiff's only documented visible injury was a "small hematoma" on the top of his head.[1]

---

[1] While both the Defendants and Magistrate Judge Wang's Report cite to Lincoln Hospital Medical Records, (ECF No. 141-5,) to substantiate the claim that the Plaintiff had a "small hematoma" on the top of his head, this Court notes that the phrase "small hematoma" does not appear anywhere in the referenced document. The cited medical records instead state that Plaintiff's head, eyes, ears, nose, throat, and neck were "normal" upon initial inspection. (*Id.* at 2.) Subsequent examinations also fail to mention a hematoma. (*Id.* at 4, 6, 8.) That said, because the hematoma is not a disputed issue in this case, this Court will accept the representation that plaintiff suffered a bruise on his head.

4

## II. LEGAL STANDARDS

### A. Reports and Recommendations of a Magistrate Judge

A reviewing court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.* The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* Portions of a magistrate judge's report to which no or "merely perfunctory" objections have been made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17-CV-569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *Brown v. Cunningham*, No. 14-CV-3515 (VEC) (MHD), 2015 WL 3536615, at *4 (S.D.N.Y. June 4, 2015) (citations omitted).

### B. Motion for Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact and [the movant] is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quotation omitted).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 285-86 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quotation omitted). Rather, the opposing party must produce "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). In this regard, "[t]he mere existence of a scintilla of evidence supporting the non-movant's case is [] insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quotation omitted). In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Id.*

Finally, the Second Circuit has instructed courts considering motions for summary judgment to afford *pro se* litigants "special solicitude," *Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988), construe "the submissions of a *pro se* litigant . . . liberally," and interpret their submissions "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted). "Nonetheless, proceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Parker v. Fantasia*, 425 F.Supp.3d 171, 183 (S.D.N.Y. 2019) (italics

for summary judgment." *Parker v. Fantasia*, 425 F.Supp.3d 171, 183 (S.D.N.Y. 2019) (italics added) (quoting *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014)).

### III. ALL CLAIMS AGAINST DEFENDANTS ARE DISMISSED

Having conducted a *de novo* review of the Report and applicable legal authorities, this Court grants the Defendants' motion for summary judgment in its entirety, including as to the claim of excessive force. This Court accepts and adopts all other portions of the Report recommending dismissal.

### A. There was No Clear Error in Recommending Summary Judgment Dismissal of Plaintiff's Claims

Because Plaintiff has failed to offer specific objections to the portions of the Report that grant summary judgment, this Court reviews those portions of the Report for clear error. *See Stone*, 2018 WL 1581993, at *3. Upon review, Magistrate Judge Wang appropriately concluded that Defendants were entitled to summary judgment on five of Plaintiff's six stated claims. For the following reasons, this Court adopts Magistrate Judge Wang's recommendations as to these claims in full.

#### *1. False Arrest*

First, Magistrate Judge Wang did not err by recommending a dismissal of Plaintiff's claim for false arrest. A claim for false arrest under § 1983 is "substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'"

7

*Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)).

Critically, "[t]here can be no federal civil rights claim for false arrest where the arresting officer had probable cause." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118–19 (2d Cir. 1995). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime" and should be evaluated on the "totality of the circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 84, 90 (2d Cir. 2007).

Here, Magistrate Judge Wang correctly concluded that the Officer Defendants had probable cause to arrest Plaintiff for menacing in the second degree. New York law defines menacing in the second degree as "intentionally plac[ing] or attempt[ing] to place another person in reasonable fear of physical injury . . . by displaying a deadly weapon [or] dangerous instrument." N.Y. Penal Law § 120.14(1) (McKinney 2025). The undisputed video evidence shows Plaintiff wielding a wooden dowel rod during an altercation with the Officer Defendants in the Jerome Center waiting area and elevator bank. (*See* Waiting Room Video, at 6:25–6:31; Elevator Bank Video, at 0:10–0:26.) As Magistrate Judge Wang noted, these undisputed facts are sufficient to establish a charge for menacing in the second degree under New York law. *See e.g.*, *People v. Bryant*, 787 N.Y.S.2d 540, 540 (N.Y. App. Div. 2004) (upholding defendant's conviction for menacing in the second degree for "displaying a tire iron"). Accordingly, the Officer Defendants had probable cause to arrest Plaintiff, and Defendants are entitled to summary judgment dismissing Plaintiff's false arrest claim.

### 2. *Violations of the Equal Protection Clause*

Plaintiff also alleges that Defendants violated the Equal Protection Clause by selectively enforcing City laws against him because of his race, veteran status, and disability. To establish an Equal Protection Claim based on selective enforcement,

> [A] plaintiff must prove that "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."

*Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). Here, Plaintiff has offered only conclusory statements in support of this claim and has presented no facts to suggest that Defendants treated Plaintiff differently because of his identity or membership in a protected class. Accordingly, Magistrate Judge Wang correctly concluded the Defendants are entitled to summary judgment dismissing this claim.

### 3. *Malicious Prosecution*

Plaintiff further alleges that Defendants committed malicious prosecution. To establish a malicious prosecution claim under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). As none of the remaining parties to this litigation are responsible for the initiation or continuation of a criminal proceeding against Plaintiff, this claim must fail. Even assuming *arguendo* that this claim could be brought against Defendants, as previously established, the Officer Defendants had probable cause to arrest

Plaintiff. *See supra* section III.B.1. Accordingly, Magistrate Judge Wang correctly concluded that this claim should be dismissed.

    *4.*    *Conspiracy to Violate Civil Rights Under Section 1985*

Plaintiff next alleges that Defendants engaged in a conspiracy to deprive Plaintiff of equal protection of the law under 42 U.S.C. § 1985. "In order to maintain an action under Section 1985, a plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quoting *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000)). Plaintiff has failed to plead any facts that support his conclusory allegations that Defendants conspired to assault him. Magistrate Judge Wang was therefore correct in concluding that this claim must fail.

    *5.*    *State Law Claims*

Finally, Plaintiff alleges that Defendants conduct leading up to and during the arrest violated New York State civil rights law. But, as Magistrate Judge Wang correctly concluded, Plaintiff's state law claims are time-barred. New York law requires plaintiffs asserting tort claims against a city based on the wrongful acts of its officers to file a notice of claim within 90 days after a claim arises. N.Y. Gen. Mun. Law §§ 50-e, 50-i (McKinney 2025). The failure to comply with New York's notice-of-claim requirement "ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999). Here, Plaintiff filed two notices of claim: the first on August 30, 2019, and the second on March 11, 2020. These notices were filed more than 90 days after the incident, which is alleged to have taken place on November 9, 2017, and almost six months after Plaintiff commenced this action.

Accordingly, Magistrate Judge Wang correctly concluded that Plaintiff's state law claims must fail as a matter of law.

## B. No Reasonable Jury Could Find that the Officers Used Excessive Force

The Fourth Amendment prohibits the use of excessive force by an officer during an arrest or seizure. *Graham v. Connor*, 490 U.S. 386, 394 (1989). "[B]ecause the ultimate touchstone of the Fourth Amendment is 'reasonableness,'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), courts analyzing excessive force claims must ask "whether the force deployed was justified from 'the perspective of a reasonable officer on the scene,' taking due account of both the individual interests and the governmental interests at stake," *Barnes v. Felix*, 145 S. Ct. 1353, 1358 (2025) (quoting *Graham*, 490 U.S. at 396). When balancing these interests, courts are guided by "at least three factors: (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).

Due to the fact-intensive nature of this inquiry, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003)). That said, "summary judgment is proper 'where undisputed medical records directly and irrefutably contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening.'" *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 641 (S.D.N.Y. 2020) (alteration in original) (quoting *Henry v. Officer Pierce*, 11-CV-845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017)).

11

Here, the medical records directly and irrefutably contradict Plaintiff's account of his injuries. Plaintiff claims to have been beaten and choked for "15 [to] 20 minutes," (Johnson Deposition, at 17–19,) resulting in severe and "permanent" bodily injuries to his "head, neck, back," and "shoulders," (SAC, at 11.) By contrast, the undisputed hospital records provide no indication that Plaintiff suffered any physical injuries from the incident whatsoever. The reporting physician specifically noted that Plaintiff's head, neck, and back were "normal on inspection" and that Plaintiff's lab, EKG, and radiology results revealed no significant findings. (Lincoln Hospital Medical Records, at 2, 4.) At most, Plaintiff suffered a small bruise on the head—a far cry from the vicious beating he alleges took place. *See supra* n.1.

The only evidence Plaintiff offers to support these allegations are his own statements and testimony. "While, in certain instances, a plaintiff may exclusively rely on her own testimony, . . . [a]bsent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment." *Campbell v. Hanson*, No. 17-CV-1024 (ALC), 2019 WL 2717691, at *5 (S.D.N.Y. June 28, 2019); *see also Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (upholding the District Court's decision awarding summary judgment because "no reasonable person could believe" the plaintiff's allegations, which were only supported by the "plaintiff's own contradictory and incomplete testimony"). Plaintiff has offered no corroborating evidence to substantiate his claims, which, again, are directly contradicted by undisputed medical records.

The unchallenged video evidence further belies Plaintiff's allegations. A court may grant summary judgment where a "relevant videotape whose accuracy is unchallenged . . . so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007); *see also*

12

*Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Plaintiff contends that while he was in the elevator the Officer Defendants "punched, kicked, and jabbed" him in the face, side, and back for "15 [to] 20 minutes." (Johnson Dep., at 17–19.) But the video evidence directly contradicts this claim. Surveillance video of the arrest shows that Plaintiff was in the elevator for just over two minutes, and the entire arrest lasted only three minutes and thirty seconds. (*See* Elevator Bank Video, at 0:33–4:05.) When viewed in conjunction with the medical records, the video evidence "utterly discredits" Plaintiff's allegation that the Officer Defendants beat him in the elevator for over fifteen minutes. *Zellner*, 494 F.3d, at 371.

Accordingly, no reasonable jury could credit Plaintiff's rendition of the arrest or conclude that the Officers used unreasonable force to arrest Plaintiff after he brandished a wooden rod and actively resisted. Defendants' motion for summary judgment on Plaintiff's excessive force claim is GRANTED.

### IV.   CONCLUSION

Magistrate Judge Wang's Report recommending dismissal is ADOPTED. Magistrate Judge Wang's recommendation not to dismiss the excessive force claim is REJECTED.

Defendants' motion for summary judgment is GRANTED as to all claims. The Clerk of Court is directed to close the open motion at ECF No. 140 and this case.

Dated: September 30, 2025
      New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge